**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT**

Your affiant, Louis G. Sackandy, hereby deposes and states as follows:

**AFFIANT'S EXPERIENCE**

1.      I am a Special Agent ("SA") of the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") assigned to the ATF Arson and Explosives Task Force, Washington, D.C.  I have been so employed since October 1998.  From October 1991 to October 1998, I was a Special Agent with the Naval Criminal Investigative Service.  I have a Bachelors Degree in Criminal Justice from the University of Edinboro in Pennsylvania.  I have completed the Criminal Investigators training course at the Federal Law Enforcement Training Center in Brunswick, Georgia.

2.      I am authorized to conduct investigations of suspected criminal violations of various federal laws, including the Federal explosives laws at 18 U.S.C. § 842 *et seq*.  ATF Special Agents are authorized by statute to apply for and execute arrest and search warrants.

3.      I personally have participated in the investigation of the offenses described in this affidavit and have witnessed many of the facts and circumstances underlying this investigation.  In addition, the statements in this affidavit are based on reliable information provided to me by other law enforcement agents and personnel and cooperating witnesses, as well as official documents and reports reviewed in furtherance of the investigation.

4.      This affidavit is submitted in support of an application for a search warrant controlled by the free web-based Internet electronic mail service provider Yahoo! Inc. ("Yahoo!"), which has its headquarters at 701 First Avenue, Sunnyvale, California.  The account to be searched is **k_r_allen**.  For the reasons detailed below, I respectfully submit that there is probable cause to believe that on the computer systems of Yahoo! there exists evidence, fruits, and instrumentalities of the crime of 18 U.S.C. §§ 842(b) (distribution of explosive materials to non-licensees or non-

permittees), 842(d) (distribution of explosive materials to aliens); 842(f) (failure to maintain required records regarding explosive materials); and 842(j) (failure to comply with storage requirements for explosive materials).

5.　　In my training and experience, I have learned that Yahoo! is a company that provides free web-based Internet electronic mail ("e-mail") access to the general public and that stored electronic communications, including opened and unopened e-mail for Yahoo! subscribers may be located on the computers of Yahoo!. Further, I am aware that computers located at Yahoo! contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seek authorization to search solely the computer account and files following the procedures described herein and in Attachment A (which accompanies and is hereby incorporated in this affidavit and application) and to require Yahoo! to respond in compliance with the procedures described herein and in Attachment A.

6.　　Because this affidavit is being submitted for the limited purpose of establishing probable cause for a warrant to search the e-mail account known as **k_r_allen**, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause.

**BACKGROUND REGARDING COMPUTERS, THE INTERNET, AND E-MAIL**

7.　　The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

8.　　Based on my training, I know the following:

a.       The Internet is a worldwide network of computer systems operated by

governmental entities, corporations, and universities.  In order to access the Internet,

an individual computer user must subscribe to an access provider, which operates a

host computer system with direct access to the Internet.  The world wide web

("www") is a functionality of the Internet which allows users of the Internet to share

information.

b.       With a computer connected to the Internet, an individual computer user can

make electronic contact with millions of computers around the world.  This

connection can be made by any number of means, including modem, local area

network, wireless and numerous other  methods.

c.       E-mail is a popular form of transmitting messages and/or files in an electronic

environment between computer users.  When an individual computer user sends e-

mail, it is initiated at the user's computer, transmitted to the subscriber's mail server,

then transmitted to its final destination.  A server is a computer that is attached to a

dedicated network and serves many users.  An e-mail server may allow users to post

and read messages and to communicate via electronic means.  Instant Messenger is

a service provided by Yahoo! which allows users to communicate directly with one

another with user-created screen names and associated profiles.

## BACKGROUND REGARDING YAHOO!

9.       Based on my training, I have learned the following about Yahoo!:

a.       Yahoo is an e-mail service available free of charge to Internet users.

Subscribers obtain an account by registering on the Internet with Yahoo!.  Yahoo!

requests subscribers to provide basic information, such as name, gender, zip code and

other personal/biographical information.  Yahoo! does not verify the information provided, however.

b.      Yahoo! maintains electronic records pertaining to the individuals and companies for which it maintains subscriber accounts.  These records include account access information, e-mail transaction information, and account application information.

c.      Subscribers to Yahoo! may access their accounts on servers maintained and/or owned by Yahoo! from any computer connected to the Internet located anywhere in the world.

d.      Any e-mail that is sent to Yahoo! subscribers is stored in the subscriber's "mail box" on Yahoo! servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Yahoo!.  If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on Yahoo! servers indefinitely.

e.      When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo!'s servers, and then transmitted to its end destination.  Yahoo! users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! server, the e-mail can remain on the system indefinitely.  The sender can delete the stored e-mail message, thereby eliminating it from the e-mail box maintained at Yahoo!, but that message will remain in the recipient's e-mail box unless the

recipient deletes it as well or unless the recipient's account is subject to account size limitations.

f.    A Yahoo! subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Yahoo!.

g.    E-mails and image files stored on a Yahoo! server by a subscriber may not necessarily be located in the subscriber's home computer.  The subscriber may store e-mails and/or other files on the Yahoo! server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence.  A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Yahoo! server.

h.    Computers located at Yahoo! contain information and other stored electronic communications belonging to unrelated third parties.  Accordingly, this affidavit and application for a search warrant seek authorization solely to search the computer accounts and/or files following the procedures described herein and in Attachment A.

i.    The e-mail account known as **k_r_allen** is controlled by the free web-based electronic mail service provider known as Yahoo! and is maintained by Yahoo! in the United States.  The information requested by this search warrant is located on the Yahoo! computer network maintained at the company's U.S. facilities.

## FACTS SUPPORTING PROBABLE CAUSE

10.    Chapter 40 of Title 18 of the United States Code makes it a criminal offense knowingly to distribute any explosive materials to persons without a license or permit; knowingly

to distribute explosive materials to an alien; willfully to manufacture, import, purchase, distribute, or receive explosive materials without making records as required by Federal regulations; or to store any explosives in a manner not in conformity with Federal regulations. The record-keeping and storage regulations relevant to explosive materials are codified at 27 C.F.R. part 555. A violation of the permitting and record-keeping requirements is punishable by ten years' imprisonment, a $250,000 fine, or both. A violation of the storage requirements is punishable by one year's imprisonment, a $100,000 fine, or both.

11.    Under Federal law, Ammonium Perchlorate Composite Propellant ("APCP") is an explosive material. Any fully-assembled rocket motor containing more than 62.5 grams of APCP is subject to the permitting, storage, and other requirements of the Federal explosives laws codified at 18 U.S.C. chapter 40 and 27 C.F.R. part 555. Any reload kit or propellant module that can be used in the assembly of a rocket motor containing a total of more than 62.5 grams of propellant (even if each individual propellant module contains 62.5 grams of propellant or less) also is subject to the permitting, storage, and other requirements of the Federal explosive laws and regulations.

12.    In addition, Federal regulations require an explosives licensee to maintain acquisition, storage, and distribution records of all explosive materials at the business premise. *See* 27 C.F.R. § 555.121(a)(2). Under Federal law, a "business premise" of an explosives manufacturer, importer, or dealer is the property on which explosive materials are manufactured, imported, stored or distributed. *See* 27 C.F.R. § 555.11. The "business premise" includes the property where the records of a manufacturer, importer, or dealer are kept, if different from the premise where explosive materials are manufactured, imported, stored or distributed. When used with respect to a user of explosive materials, the term encompasses the property on which the explosive materials are

received or stored and where the records of the users are kept, if different from the premise where explosive materials are received or stored.

13.     All the facts and circumstances set forth in this affidavit relate to possible criminal violations of various Federal explosives laws, including permitting, record-keeping, and storage requirements, as set forth in 18 U.S.C. §§ 842(b), 842(d), 842 (f), and 842(j).

14.     ATF Industry Operations, a component of ATF, regulates the firearms and explosives industry.  On or about February 13, 2006, the ATF Falls Church, Virginia III, Industry Operations Field Office, received a special request from the ATF Baltimore, Maryland Industry Operations Field Office in reference to the business premise known as Performance Hobbies, to investigate acquisition and distribution records to determine whether the licensee doing business at Performance Hobbies, KENNESSON RAY ALLEN, was maintaining the records required by Federal law.

15.     According to its website ([www.performancehobbies.com](www.performancehobbies.com)), Performance Hobbies is a full service hobby shop that deals in a full line of rocket reload kits, high power rocket motors, hardware, and accessories.  The website also indicates that "Performance Hobbies will be "at a number of rocket launches throughout the country during calendar year 2006."  High power rocket motors, which can be purchased in various sizes, and contain the propellant APCP, which is Federally regulated as an explosive material.

16.     Performance Hobbies is located at 442 Jefferson Street, N.W., Washington, D.C., and is owned and operated by ALLEN.  ALLEN maintains a type 24 (importer of low explosives) license that allows ALLEN to receive and distribute low explosive materials, such as APCP, in accordance with Federal regulations.

17.     On March 14, 2006, ATF Industry Operations Investigators ("IOI") Jennifer Scott and Patrick Hoover conducted an investigative inspection of the business premise of Performance

Hobbies ("the business premise").  IOI Scott and IOI Hoover initially met with ALLEN at the business premise.

18.    IOI Scott requested the required acquisition and distribution records from ALLEN. ALLEN informed IOI Scott and IOI Hoover that he did not have the required records at the business premise, because his acquisition and disposition record book was in his truck when it was stolen on February 1, 2006, and when the truck was recovered on February 2, 2006, the acquisition and disposition record book was missing.  ALLEN did produce one box of distribution receipts from his truck, but in contravention of the applicable laws and regulations, ALLEN refused to allow IOI Scott and IOI Hoover to enter the business premise to inspect any records kept there.

19.    During the course of the investigative inspection, ALLEN told IOI Scott that he had received Federally regulated high power rocket motors via Federal Express ("FedEx") at the business premise.  Because APCP has been classified as an explosive material, Federal regulations require that it be stored in at least a type 4 explosives magazine, that is, a building, igloo or "Army-type" structure, tunnel, dugout, box, trailer, or a semi-trailer or other mobile magazine.  *See* 27 C.F.R. § 555.210.  Furthermore, because of the physical location of the business premise in a residential neighborhood, ALLEN is restricted must use a type 4 indoor explosives magazine as specified in 27 C.F.R. § 555.210(b)(1).  ALLEN told IOI Scott and IOI Hoover that he has not had a type 4 indoor magazine at the business premise since June 2005.  According to ATF records, ALLEN has maintained a type 4 indoor magazine in a detached garage on the business premise property since December 2001, but ALLEN refused to allow IOI Scott and IOI Hoover to enter the garage to verify that such a magazine was inside.  The garage, which is located in the rear of the business premise, and is described as a one story wooden building, white in color, with a grey door, bearing writings,

"KDYA MLK AVE."  ALLEN also refused to allow IOI Scott and IOI Hoover to enter the business

premise to determine whether any explosives were being illegally stored there.

20.     ALLEN did allow IOI Scott and IOI Hoover to inspect a type 3 day box that was

stored in the enclosed bed of his personal vehicle, which is described as a Dodge Ram truck, silver

in color, bearing North Carolina registration tag PYD 3358.  Under Federal regulations, a type 3 day

box may be used to transport explosive materials or to store explosive materials, while attended, for

a brief time until the explosive materials can be transferred to the required magazine.  In ALLEN's

day box, IOI Scott discovered eight (8) propellant modules, totaling in excess of 62.5 grams of

APCP, in violation of Federal regulations.  ALLEN told IOI Scott that the eight (8) propellant

modules had been stored in his day box for four (4) months.

21.     On March 16, 2006, ALLEN met with IOI Hoover at the Falls Church, Virginia III

Industry Operations Office and provided IOI Hoover with a portion of the records required by

Federal regulations.  ALLEN brought a laptop computer to the office that ALLEN identified as a

computer that he uses for his business.  From his Yahoo! Inc. ("Yahoo!") e-mail account, ALLEN

downloaded ten (10) invoices (acquisition records) dating from about December 2005 to March 2006

and gave them to IOI Hoover.  ALLEN told IOI Hoover that he has been receiving invoices via e-

mail, into a Yahoo! Inc. account, from five (5) distributors since 1995.

22.     The ten (10) invoices that ALLEN provided to IOI Hoover reflected transactions that

occurred with a Federal explosives distributor, RCS Rocket Motor Components, Inc.  Some of the

invoices contained FedEx tracking numbers.  After investigating these tracking numbers, IOI Scott

learned that FedEx received one package for ALLEN containing invoice numbers 31948-2 and

31949-2 at its Beltsville, Maryland facility on March 16, 2006.  Invoice number 31949-2 contained

four (4) Federally regulated rocket motors.  FedEx attempted delivery of the package on March 17,

20, and 21, 2006, March 20, 2006, and March 21, 2006.  ALLEN signed for and accepted delivery

of the package on March 28, 2006, even though.  IOI Scott and IOI Hoover had notified ALLEN

during the March 14, 2006, investigative inspection that he could no longer store explosive materials

because he did not have a proper storage magazine.  ALLEN previously had informed IOI Scott and

IOI Hoover that he normally places an order of explosive materials from his distributor each week,

usually on Monday or Tuesday.

23.    On March 16, 2006, ALLEN also provided IOI Hoover with transaction receipts

dating from about January 2005 to about March 2006.  ALLEN is using these transaction receipts

to represent required ATF distribution records. A review of the receipts revealed that ALLEN

engaged in approximately 129 transactions to 86 different purchasers that involved high power

rocket motors in excess of 62.5 grams of the propellant APCP.

24.    Under Federal law, a licensee, such as ALLEN, must verify prior to or with the first

order of Federally regulated explosive materials that the customer has a permit or license evidencing

legal authority to receive explosive materials.  A copy of the purchaser's permit or license must be

kept on file for review by ATF Industry Operations.  The business receipts obtained by IOI Scott and

IOI Hoover reflected approximately 129 transactions to 86 different purchasers in which ALLEN

failed to verify and obtain the required customer permits.  IOI Scott subsequently determined that

of those 129 transactions, 62 transactions were made to 52 different persons without the required

permits or licenses and six (6) transactions were made to five (5) different Canadian nationals.

ALLEN admitted to IOI Scott and IOI Hoover that he never checked whether his customers legally

could receive explosive materials.

25.    On May 10, 2006, a search warrant for ALLEN's business premise and his truck was

executed.  The following items were seized as evidence: One (1) Dell Inspiron laptop computer; one

(1) Verizon wireless Palm Treo cell phone; two (2) Aerotech high power reloadable motor systems I161W-M (propellant weight 182.7 grams each); fifteen (15) Loki research rocket motors model H144 (propellant weight 120 grams each); two (2) Pro 38 high power rocket motor reload kits with electric match attached 6481285-15A; one (1) case containing 11 Loki research reload kits 1405 (propellant weight 240 grams each) and four (4) Loki research reload kits I110 (propellant weight 240 grams each); one (1) case containing twelve (12) RMS motor systems G33-7J (propellant weight 72.2 grams each and eleven (11) Aerotech RMS G33-5J (propellant weight 72.2 grams each); nine (9) Adams sales order books; one (1) case labeled for shipment to Davis Sumek with one (1) Aerotech RMS motor system I248W-M (propellant weight 312.5 grams) and one (1) Ellis Mountain G35-10 motor invoice; one (1) generic IBM computer tower; five (5) Adams sales order books; one (1) case containing 18 U.S. rocket motors 120G120-4 and thirteen (13) U.S. rocket motors 40E25-4.

26.    Yahoo! has indicated that the Yahoo! e-mail account **k_r_allen@yahoo.com** is registered to a Mr. Ken Allen, of Washington, D.C. 20011. The account was created on October 12, 1998, and was accessed almost daily between March 1, 2006, and April 9, 2006, including four times on March 16, 2006, at the following Greenwich Mean Times: 13:12:37, 15:41:04, 18:35:49, and 23:59:38. These correspond to the following Eastern Standard Times: 9:12:37 a.m.; 11:41:04 a.m.; 2:35:49 p.m.; and 7:59:38 p.m. The March 16, 2006 meeting between ALLEN and IOI Hoover began at 10:30 a.m. Eastern Standard Time and ended at approximately 5:00 p.m. Eastern Standard Time. ALLEN logged into his Yahoo! account at least once during the meeting shortly before noon. During the meeting, ALLEN allowed IOI Hoover to review customer invoices in ALLEN's Yahoo! account. In addition, at 11:58 a.m. on March 16, 2006, ALLEN sent IOI Hoover an e-mail from k_r_allen@yahoo.com. The "From" line on this message reads "Ken Allen [mailto: k_r_allen@yahoo.com]."

27.     Based on the foregoing, I have probable cause to believe that KENNESSON RAY

ALLEN has violated 18 U.S.C. §§ 842(b) (distribution of explosive materials to non-licensees or

non-permittees), 842(d) (distribution of explosive materials to aliens); 842(f) (failure to maintain

required records regarding explosive materials); and 842(j) (failure to comply with storage

requirements for explosive materials).  Furthermore, I have probable cause to believe that ALLEN's

Yahoo! e-mail account, **k_r_allen@yahoo.com**, contains evidence, fruits, and instrumentalities of

these crimes, specifically acquisition and/or distribution records that ALLEN is required to keep

under Federal law, which would indicate from whom and when ALLEN receives explosives and to

whom and when he distributes them.

**JURISDICTION**

28.     Pursuant to 18 U.S.C. § 2703(a)-(c), a search warrant may be issued for the contents

of wire or electronic communications in electronic storage or in a remote computing services and

for records concerning electronic communication services or remote computing service "by a court

with jurisdiction over the offense under investigation."  Furthermore, "[a] court order for

disclosure . . . may be issued by any court that is a court of competent jurisdiction . . ." 18 U.S.C.

§ 2703(d).

29.     Pursuant to 18 U.S.C. § 2711(3), "the term 'court of competent jurisdiction' has the

meaning assigned by section 3127, and includes any Federal court within that definition, without

geographic limitation."  In turn, Section 3127 defines the term "court of competent jurisdiction" to

mean "any district court of the United States (including a magistrate judge of such a court) . . .

having jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A).

30.     I believe that to determine whether ALLEN is keeping the records required by Federal

regulations and obtaining proper verification that those to whom he is distributing explosive

materials have the required licenses or permits, and to determine whether and when ALLEN is receiving explosive materials for which he lacked (and still lacks) the proper storage facilities, it is necessary to seize all e-mail messages and other information stored in the account of **k_r_allen** for the following reasons. First, because voluminous amounts of information can be stored in a computer account, the searching authorities must carefully open and examine all the stored data to determine which of the various files are evidence of the crime. This sorting process can be extremely time consuming and would be impractical to do at Yahoo!'s offices. Second, this sorting process must be done in a controlled environment, due to the extensive array of computer hardware and software that might be necessary for computer experts to analyze the data and to recover all files, while at the same time ensuring the integrity of the data recovered and reducing the possibility of inadvertent modification of the data in question. Such a controlled environment will be provided by ATF.

31.    For these reasons, I request authority to seize all e-mail messages and other content stored in the account of **k_r_allen**. U.S. federal law enforcement agents and support employees will review the records sought by the search warrant and will segregate any messages and content constituting evidence of violations of federal criminal law. Additionally, I request that Yahoo! be allowed to copy the data outside of this agent's presence.

## CONCLUSION

32.    Based on the forgoing, I respectfully submit that there is probable cause to believe that on the computer systems owned, maintained, and/or operated by Yahoo!, headquartered at 701 First Avenue, Sunnyvale, California there exists evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 842(b), 842(d), 842(f), and 842(j) within the e-mail, electronic communications, and other content stored in or associated with account of **k_r_allen**. By this affidavit and application,

-14-

I request that the Court issue a search warrant directed to Yahoo! allowing agents to seize the e-mail and other information stored on the Yahoo! servers for those computer accounts and files in accordance with the search procedures described in Attachment A.


_____
Louis G. Sackandy, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives


Sworn and subscribed to before me this \_\_\_\_ day of June, 2006.


_____
United States Magistrate Judge

**ATTACHMENT A**

I.      **Service of Warrant and Copying of Computer Files by Yahoo**

     A.      The officer or agent executing this warrant shall effect service by any lawful method including faxing the warrant (with Yahoo!'s consent) to Yahoo!'s offices at the location specified in the warrant.

     B.      The officer or agent executing this warrant shall permit Yahoo!, as custodian of the computer files described in Section II below, to locate the files, copy them onto removable electronic storage media or print them out as paper copies (or use a different copying method if specified in Section II below), and deliver the copies to the officer or agent, who need not be present during this process at the location specified in the warrant.

     C.      Pursuant to 18 U.S.C. § 2703(b)(1)(A), Yahoo! and its employees and agents are prohibited from notifying the subscriber(s) of the subject e-mail addresses or accounts or anyone else of the search warrant, application for the search warrant, or any related request.

     D.      The United States Attorney's Office and the U.S. Department of Justice shall not be prohibited from sharing information obtained from this warrant with other law enforcement and intelligence agencies, including foreign governmental agencies, for use in investigations and prosecutions.

II.      **Files and Account to be Copied and Delivered by Yahoo! Employees**

     Any and all records, content, and other stored information relating to the Yahoo! IDs **k_r_allen**, including the following:

     A.      Any and all e-mails and their content, including any attachments, sent or received by or through the account, whether saved or deleted, whether contained directly in the e-mail account or in a customized "folder";

-2-

B.    a complete log file of all activity relating to the account (including dates, times, method of connection, port, dial-up, registration IP address, and/or location);

C.    Any and all records of subscriber account preferences maintained by, or related to, the account(s);

D.    Any and all e-mail addresses listed in the account'(s) buddy list and address book, as well as aliases;

E.    Any and all contents of electronic files that the subscriber has stored in the subscriber's Photos and Briefcase areas.

In addition to material presently in the mailboxes, Yahoo should provide data preserved, at the request of the United States Attorney's Office for the District of Columbia pertaining to the above account.  Copies of the above-described records and stored information should be obtained from original storage and provided on CD-R (CD-Recordable) media.